**UNITED STATES of America**

v.

**Vincent Joseph CALLAHAN.**

**Crim. No. 86–00052–3, Civ. A. No. 86–7118.**

United States District Court, E.D. Pennsylvania.

March 11, 1987.

Jeanne K. Damirgian, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Vincent Joseph Callahan, pro se.

## MEMORANDUM

NEWCOMER, District Judge.

In March 1986, Vincent J. Callahan, the petitioner, pleaded guilty to one count of conspiracy to violate civil rights, 18 U.S.C. § 241, and one count of attempted destruction of government property, 18 U.S.C. § 844(f). The court imposed sentences on petitioner and his two codefendants on May 13, 1986. Petitioner was sentenced to three years' imprisonment, to be followed by five years' probation. Petitioner was also required to make restitution for the damage caused by the fire he set, and to pay the $100.00 mandatory special assessment. Callahan now moves to have the court vacate his guilty plea and sentence pursuant to 28 U.S.C. § 2255, the statute providing federal prisoners with collateral post-conviction relief in the nature of habeas corpus. For the reasons explained below, petitioner's motion will be denied.

## I. *Facts*

The incident which gave rise to this prosecution is well known. In November 1985, Charles Williams and Marietta Bloxom, a black couple, moved into the house located at 2548 South 61st Street in Philadelphia. At the time, the house was owned by the Veteran's Administration, an agency of the United States government. The racial composition of the neighborhood in which that house is situated was mostly if not entirely white. After repeated shameful protests throughout the neighborhood, occasioned by black citizens having moved into the area, the Williams-Bloxom family moved out of the house and the neighborhood. Still, the tension in the neighborhood continued.

On December 12, 1985, the house at 2548 South 61st Street was burglarized and set afire. According to the indictment in this case, petitioner conspired along with George Steward and Thomas O'Donnell to burn the house in an effort to intimidate Williams, Bloxom and other black citizens, and to deprive them of their civil rights on the basis of race. The indictment also charged the three defendants with attempting to destroy by fire a building owned by the United States. Petitioner and O'Donnell pleaded guilty to both counts of the indictment. Stewart exercised his right to trial and was convicted on both counts. At Stewart's trial, Callahan testified at length concerning Stewart's conduct and concerning Callahan's own conduct, in setting the fire and in seeking to keep blacks from exercising their rights and from moving into the neighborhood.

Callahan now seeks to attack his conviction, which was premised on a plea of guilty, and the sentence of this court, on four grounds: that his confession was coerced and that the confession unlawfully induced the guilty plea; ineffective assistance of counsel; the court's lack of jurisdiction; and failure of petitioner to make his plea knowingly and intelligently. I will address each argument in turn.

## II. *General Legal Standards Governing Section 2255*

Section 2255 provides a remedy in the nature of habeas corpus to prisoners in federal custody. *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). A prisoner in federal custody may seek relief under that statute,

upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

18 U.S.C. § 2255. However, not every legal error can be raised through a section 2255 petition. *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *United States v. Williams*, 615 F.2d 585, 589 (3d Cir.1980). "Rather, the asserted error of law must be 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.*, quoting *Hill, supra*, 368 U.S. at 428, 82 S.Ct. at 471. Further, this need for the extraordinary remedy afforded by habeas corpus must be apparent. *Davis, supra*, 417 U.S. at 346, 94 S.Ct. at 2305; *Hill, supra*, 368 U.S. at 428, 82 S.Ct. at 471; *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939); *Williams, supra*, 615 F.2d at 589. *See also* 16 *Fed.Proc., L.Ed.* 41:412.

■ Here, petitioner's burden is particularly heavy because he seeks to call into question his guilty plea. "[T]he concern with finality served by limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (footnote omitted) (holding formal error in plea colloquy does not warrant section 2255 relief). *See also Blackledge v. Allison*, 431 U.S. 63, 71–72, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136 (1977). In appropriate circumstances, where facts are presented which undermine the credibility of the admissions and colloquy upon which the plea was based, a court may clearly look behind the guilty plea without undermining the general principle of finality. *See, e.g., Blackledge, supra; Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1967). As the Supreme Court wrote in *Blackledge, supra*, 431 U.S. at 75, 97 S.Ct. at 1629–30:

In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment (footnote omitted.)

However, finality is not being lightly disturbed.

[T]he representations of the defendant, his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity.* The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 74–75, 97 S.Ct. at 1629 (citations omitted). I will now examine petitioner's claims in light of these general principles.

III. *Petitioner's Claims*

A. *Involuntary Confession and Guilty Plea*

Petitioner first contends that his confession of guilt and his guilty plea were "obtained by intimidation, coerced [sic] and threats." Declaration of Vincent J. Callahan, attached to Section 2255 Petition.

"I state that state police investigators Collins and McGraw stated to me that I would be an old man when I got out of prison if I did not confess. I state that Collins and McGraw made other gestures and threatening remarks to entice the plea and confession.

*Id.* Petitioner also states in his declaration that he was interrogated on several occasions without his attorney being present.

Petitioner further alleges that, as a result of his mistreatment by police, he confessed and pleaded guilty to conspiring to deprive blacks of their civil rights although

he "knew from his own knowledge that no persons lived in the burned dwelling at issue in this criminal cause of action ... [, that he] engaged in the crime to burn the building to assure that no individuals would be subjected to live in such deplorable conditions." *Id.* "I state that I did not intend to violate anyone's civil rights." *Id.*

In other words, Callahan admits that he participated in a conspiracy to burn the house. He further argues that he did *not* intend to violate anyone's civil rights, but rather that he was coerced to confess and plead guilty involuntarily because of intimidation by police officers.

At no time prior to the instant petition did petitioner raise the possibility that his plea or confession might have been anything other than voluntary. Indeed, during the colloquy which preceded the change of petitioner's plea, petitioner specifically denied that anyone threatened him or forced him in any way to change his plea to guilty. Transcript of March 14, 1986 at 16. His current claim of involuntariness is also contradicted by clear evidence in the record. Petitioner's arrest was occasioned by his *voluntary* surrender to the Federal Bureau of Investigation after he himself had contacted authorities, claiming to have knowledge of the offense. At the time of his surrender, he confessed to his own involvement and named his codefendants as other participants in the crimes. All indications of involuntary confession and plea are absent from the record in this case.

■ Petitioner's assertions in support of this claim are simply incredible. His voluntary surrender, confession, extensive testimony at trial and implication of the co-conspirators speak with much more force than his verbal allegations in support of this element of his petition.

■ Even if the court were to accept petitioner's conclusory claims that his initial confession had been coerced by investigators, which the court does not, his guilty

plea still stands. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). That the confession might not have been admissible is not grounds for overturning a voluntary guilty plea entered subsequently. *Bunsby v. Holman,* 356 F.2d 75, 77 (5th Cir.1966) (Maris, J., sitting by designations); *United States v. Morin,* 163 F.Supp. 941 (W.D.Pa.1958), *aff'd,* 265 F.2d 241 (3d Cir.1959). The plea itself was not coerced, and defendant entered his plea of guilty after being fully informed of his rights in accordance with Fed.R.Crim.P. 11. Nor was the allegedly coerced confession at any time used against the petitioner. Furthermore, petitioner's own testimony at the trial of codefendant Stewart is completely consistent with the statements petitioner now seeks to recant. *See United States v. Stewart,* 806 F.2d 64, 66 (3d Cir. 1986). Because even an allegedly coerced confession under these circumstances would not undermine the validity of a subsequent guilty plea, the first gound for the petition is rejected.

### B. *Ineffective Assistance of Counsel*

Petitioner's second contention is that his counsel was ineffective for failing to move to dismiss count I of the indictment.[1] An attorney's performance must be reasonable under prevailing professional norms. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Moore v. United States,* 432 F.2d 730, 736 (3d Cir.1970). Petitioner "bears the burden of proving his claim of ineffective assistance of counsel." *Government of the Virgin Islands v. Bradshaw,* 726 F.2d 115, 117 (3d Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's strategies and choices are presumed to be sound, and a defendant must rebut that presumption to make out an ineffective assistance claim.

---

**1.** In his petition, Callahan claims that counsel failed to make a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29. A Rule 29 motion, while appropriate during a trial, would not apply to petitioner's situation. Rather, the

motion—if called for—should have been made pursuant to Fed.R.Crim.P. 12(b). This procedural point in no way effects the court's consideration of the instant petition.

*Id.* If a defendant can overcome this presumption, then he must also establish that he was prejudiced. *Id.* at 687, 104 S.Ct. at 2064. *See also Bradshaw, supra,* 726 F.2d at 117.

Petitioner asserts that his counsel was ineffective [2] for failing to seek dismissal of the charge under 18 U.S.C. § 241, count I of the indictment, and for failing to take a variety of steps to challenge the validity of that charge. Section 241 makes it a crime for:

> two or more persons to conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.

█ Proof of violation of section 241 requires a showing of an agreement with the specific intent to interfere with the exercise of a federal right, and at least one overt act taken to accomplish the intent of the conspiracy. *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Petitioner was charged with conspiring to interfere with the rights of Williams, Bloxom and other black citizens to live in the house they desired, without regard to race. At the time petitioner and others set the house on fire, the house was owned by the Veterans Administration, an agency of the United States government. Bloxom and Williams had moved out of the house because of the protests against their presence, and their fear of a violent incident like the one which in fact occurred.

█ Petitioner argues that because the house was unoccupied, the Williams-Bloxom family no longer intended to live there, and the house was owned by the United States, the elements of section 241 could not be proved. Thus, he contends, counsel was ineffective for failing to have the charges under section 241 dismissed. Petitioner's argument fails for at least two reasons. First, on these facts a reasonable factfinder could have concluded that Callahan and the others intended to interfere with Williams and Bloxom's rights. As the Third Circuit pointed out in deciding co-defendant Stewart's appeal on this point: "As Callahan testified at trial, '[e]verybody thought that they [Bloxom and Williams] would be back in.'" *Stewart, supra,* 806 F.2d at 67. Second, a reasonable factfinder certainly could have concluded that Callahan conspired to keep other black citizens from exercising their right to live in that all-white neighborhood. *Id.* The facts asserted by petitioner simply do not remove his conduct from that proscribed by section 241. Counsel's decision not to seek dismissal of that count was thus eminently reasonable; failure to seek dismissal was in no way ineffective assistance of counsel.

### C. *Lack of Jurisdiction*

█ Petitioner's third ground for seeking the court to vacate the sentence pursuant to count I is lack of jurisdiction.[3] Section 241 states that conspiracy to hinder any citizen in the enjoyment of rights secured by federal law is an offense against the United States. The district court clearly has jurisdiction to hear such a case. 18 U.S.C. § 3231.

### D. *Rule 11*

Petitioner's final argument is that he would not have entered his plea of guilty had he been sufficiently apprised of his rights by the court as required by Fed.R. Crim.P. 11. Petitioner alleges four specific deficiencies. First, petitioner alleges that he "would not have made his guilty plea if he had known about (1) his *Miranda* rights," (2) his right of compulsory process to subpoena witnesses, (3) his right to remain silent and not to be compelled to

---

2. During the colloquy preceding the change of plea, petitioner was specifically asked by the court: "[A]re you satisfied with your attorney's representation of you?" Petitioner answered "Yes." Tr. at 8.

3. To the extent that petitioner's jurisdictional arguments are premised on the alleged non-existence of elements of proof of his violation of section 241, they are rejected for the reasons stated above in part III.B. of this Memorandum.

incriminate himself, and (4) the Court's alleged failure to develop an adequate factual basis to accept petitioner's guilty plea.

 I have reviewed the transcript of petitioner's guilty plea, and am satisfied that petitioner was fully advised of his rights as required by Fed.R.Crim.P. 11(c) during the course of the colloquy. Furthermore, the factual basis for petitioner's plea was clear as to each element of the two crimes, with which petitioner was charged.

For all of these reasons, Mr. Callahan's petition pursuant to section 2255 will be denied.

An appropriate order follows.